1603, Vandesande v. United States, Mr. Hanna Good morning, Your Honors, may it please the Court, Rod Hanna on behalf of the appellant, the plaintiff below, Gladys Vandesande. This case is now, this is the second time this case is before Your Honors. I believe Judge Newman, in fact, sat on the panel on the first appeal that was done here with regard to the dismiss, which was reversed. Now we are here before you, Your Honors, on a dismissal of the entire case based on two summary judgment decisions of Judge Grigsby of the Court of Federal Claims. What exactly is the relief that you want, other than the 2003 calculations? We want a reversal, Your Honors, of the decisions and a finding of liability of breach at the very least. That was the only issue, whether or not the government was liable for the breach of the stipulation agreement for damages, whether it was paragraph 14 or paragraph 12 or paragraph 21. Fundamental issue was whether or not the government was liable for breach and our position was that it was undisputed and based upon interpretation of the contract that the government was liable. I would like to focus, Your Honors, on paragraph 14, which is the central dispute here. In that regard, Mr. Newman, let me ask you, I'm scratching my head a little bit about one item here. On page three of the government's brief, it says, it's a red brief, it says in the first full paragraph, I'll just read this one sentence, Ms. Vandisandi could serve USPS with account and calculated tax consequences for 2003 under paragraph 14 of the agreement and subject to paragraph 14 be paid. Now, I or one of my colleagues, I'm sure, will ask the government about that, but how do you read that? Is the government saying, you know, let's start all over again? Have you had any conversations in light of this statement? We have, Your Honors. In fact, we were able to, to some extent, resolve one of the issues and that was the 2004 tax consequence calculation, which is not before, Your Honors. But not the 2003? The 2003, no. We have not because we have some, I guess, a little bit different issue. One of the fundamental, and I think a fundamental misinterpretation of paragraph 14 is this issue that Judge Grigsby found, and the government continues to argue, that as a condition preceding to any payment whatsoever by the US Postal Service under paragraph 14, that my client, Ms. Vandisandi, had to submit account and calculated tax consequence calculations. And by certified mail. By certified mail is what the claim is. That was the key. That was what. Well, Your Honors, if you actually step back and you actually look at paragraph 14, and If you look at the language of that paragraph, the only mention of our client, my client, I'm sorry, having to submit calculations by an accountant is with regard to 180-day payment requirement. If you look further in paragraph 14. But she did get the calculations for 2004. Ultimately, she did as an alternative argument when they were dealing with, I think, an EEOC issue in 2006. Right. That was quite a bit later. So, putting aside the sort of silly argument that you can't put it in first-class mail as opposed to certified mail, why aren't those calculations enough to just get, at least, I know you debate whether or not they cover the full consequences. It is one of our arguments, Your Honor, that, and it's really a fallback argument to some that they should have paid at least the accountant-calculated amount back in February of 2005 when they actually had that amount. But how much money is now at stake? What is the difference between your position and theirs in terms of what's still owed? One of the, the difference in position, well, one of our positions was they should pay all the tax consequences because that's what it says in the contract. Then just tell us your reasonable position. Our reasonable position, Your Honor, is that a breach occurred, and this is, this is just grounds for reversal itself. If you look at paragraph 14, once our clients submit... How much money is involved? I'm sorry, Your Honor? What is the amount that you are claiming? At the very least, the breach is the not payment of the 30, the exact amount, Your Honor, 33,691 calculated by their account. That happened in February of 2005. That breach... That was unpaid? None of that was paid? None of that was paid. They haven't paid, been paid a penny of the 2003 tax consequences. Here we are 15 years later, Your Honor, and they haven't paid one cent. Even though they had an accountant, they hired an accountant back in 2005 and calculated what they considered to be the tax liability, and that was $33,691. So that's the total tax liability? That's what they were claiming was the adverse tax liability. If you look at paragraph 14... Okay, so this would be under the government's theory, you're saying, is the 33,000? Under their theory, if you don't buy into the all tax, all tax liability as opposed to just adverse tax liability. So the real debate then, what we're talking about is the interest, is that what you're saying? No, we're not talking about the interest, Your Honor. Right, because the government doesn't have to pay. We're talking about timing. Paragraph 14 required, with regard to any tax consequence submission, doesn't have to be a tax accountant because that was not mandatory under paragraph 14, any, and they submitted something in January of 2005 after Mr. Kessler, who was their representative, submitted a letter to Mr. Van de Sande saying, we will not pay you until you provide us with this documentation. We have hired a CPA, Mr. Michelson, to handle this. And so Mr. Van de Sande, on behalf of his wife back then, submitted all the documentation that Mr. Kessler was asking for, expecting to get paid something. But it was required to be certified, so did you... It was. Back then it was. Back then it was. Now, again, it was not done by an accountant. There was no accountant submission at that time. They wanted it certified by an accountant. You said it was certified. No, it was sent by certified mail. I thought that's what you were asking, Your Honor. Well, I would have been certified by the accountant. No, no, it wasn't required, Your Honor. Paragraph 14 does not require... Eventually, you got an accountant. Eventually, it happened, yes. Right, this is what I don't understand as to this piece. Why is this piece still out there? So the government takes what, like I said, I think is a silly position that because you sent it in the mail rather than certified mail, because really that's substantial compliance with the contract should say that just the fact that they got it in the mail is enough. But the government's also saying that because you just attached it to your EEOC materials, it wasn't really submitted. So why didn't you just submit it? I wasn't representing her back then. I don't know. I know, but in the course of this proceeding... I had another lawyer representing them at the time. In the course of this proceeding, couldn't you have submitted it again? We could have, but then it would have started the whole process again. Actually, the position my client took... Started what process? Once they get it, they have no problem. This whole process of making a submission of a tax consequence payment. That happened back in January of 2004. I know, but in the contract, it says once they get it, they have to pay it, and they have to pay it within a certain period of time. When you were back before the Court of Federal Claims, you could have said, all right, at least as to this part, we're going to send it to you again, and then they would have had to pay it. They say right now you could send it to them again and they'd have to pay it. That's the position, but that's not the way the contract is written, though, Your Honors. There is a breach that occurred 45 days after January 10th, 2004, and that is regard to the payment of at least the $33,691. So what's the damage, though? At the very least, it's that. The $33,000, which you could have gotten from the government at any point by submitting that account. Right, but then they would give up all the interest that would have accumulated on that. Isn't there a problem with the government having to pay interest? There is a problem because Paragraph 14 requires them to pay interest from the date that it's due. Now, if you look at Paragraph 14, and this is the only way you can really interpret Paragraph 14, and I'd like to take you towards the middle of Paragraph 14, because it talks about the accountant calculating.  having to make any payment whatsoever, that there had to be an accountant-prepared tax calculation. And that is not what Paragraph 14 says. Paragraph 14 says if there is a tax accountant-calculated number that's provided by Mr. Van Assenning, then the government has 180 days to pay that. If you look further in Paragraph 14, it says, the agency may only challenge the complainant's submission for tax consequences, it doesn't mention or condition it upon an accountant, by utilizing the services of another state-of-Florida licensed certified public accountant, who shall provide a detailed report as to the agency's calculation of the estimated tax consequences, detailing each disputed amount. Let me ask you, the only reason I'm kind of interrupting here is that time passes more quickly than we'd like sometimes. And on this figure, to follow up a little bit with the question Judge Newman had about exactly how much is at stake here, in Van de Sande 1, the Court of Federal Claims said that on this tax consequences issue, as I understand it, it said that the government was only liable for the taxes owed because she would receive her wages and leave payments in a single lump sum. And I think, as I understand it, that takes out of play a lot of the money that you were asking for before. Now, if we were to affirm that decision in Van de Sande 1, to which I just referred, does that mean that all the tax consequences money that we're talking about is this dispute about $33,961 that Mr. Michelson presented, or, on the other hand, the $43,000 that your accountant, Mr. Gomez, came forward with? Am I right on that? Well, ultimately what the argument was, Your Honor, is that if you look at it not just as adverse tax consequences, but all the tax consequences. She got a very large sum of money in 2003, and the tax consequences of that was her tax liability because she didn't do any other income that year. Getting back to my question, if we were to agree with what the Court of Federal Claims said that I just referred to in Van de Sande 1, is all that we're arguing about here in terms of tax consequences this $33,000 on the one hand and the $40,000, whatever it is? $8,000 difference, yes. Okay. No, I realize that you dispute Van de Sande 1, but I just want to make sure I understood where we are if we don't agree with you on that. Right. It is a breach argument that at the very least they should have paid the $33,691 back when it was calculated in February of 2005. So when I originally asked you if this was really about the interest, you said, no, it's not about interest. And then you came back around and said, well, yeah, it is about interest. Well, it is about the use of the money over time. It should have been paid back in February of 2005. We're not here specifically arguing over a certain amount of money in interest, which is something that would have to be done on a damage calculation if we go back and it goes back. This was just purely a liability issue. Did the government, did the Postal Service breach the stipulation? They did because they had 45 days from January 10th to submit Mr. Michelson's calculations to Ms. Van de Sande. It says it right in paragraph 14. They didn't do that. They never have. But January 10th is when you submitted it without an account, right? Right. When did you do the accountant one? That was back in the end of April of 2006. Mr. Michelson's, correct me if I'm wrong, as I understand the record, the government received the Michelson figures on January 5th. February 5th. February 5th of 2005. And then you presented your figures in April of 2006, and then it's your contention based on a pleading in the Court of Federal Claims that it was only during discovery in the Court of Federal Claims that you received the Michelson figures. Is that correct? We actually got it in one of the prior lawsuits that were . . . There was a prior lawsuit in the Southern District of Florida. They produced as part of it these records of Mr. Michelson. Somewhere in 2007? That case? Yeah. No, but the record's somewhere in 2007. Yeah, 2007. We probably got them around that time. But if you look at paragraph 14, and we're just focusing on paragraph 14. I know that. I know I'm running out of time. But paragraph 14 required the government, once they hired an accountant, to respond to Ms. Van de Sande's tax consequence demand, even though it wasn't done by an accountant. And they then had 45 days from that date to submit to Ms. Van de Sande their accountant's calculations. And then after that, if there was any disagreement on the tax consequences, any, not only an accountant calculated tax consequences, any disagreement on the tax consequences, the agency shall be required to make timely payment of the nondisputed portion of the tax consequence payment. They never did that. So that's a breach in and of itself right then and there. And that's going back to February. Even if we're just talking about $33,000? Even if we're talking about Ms. Van de Sande submitting $100-something thousand. They then got an accountant and said, well, this is what we think it should be, $33,691. Then they had 45 days from that point in time to submit that to Ms. Van de Sande. So that was the nondisputed portion? Well, that's undisputed. They never did. They never did the 45 days. They never paid her. Then they had to pay her at least what was agreed upon, that their accountant agreed upon, which was the $33,691. They never did that. They never paid her a penny. And what was their explanation for not paying her that amount? No explanation whatsoever at that time. They never told Ms. Van de Sande that you have to, before we can pay you, you have to get an accountant to calculate your advert tax consequences. That was not done until much later in 2006 when the EEOC took that position in a decision and handed the government an argument. That was 2006. I think it was March of 2006 when the EEOC decided, and it had to do with the 2004 calculations, that you have to submit it through an accountant, Ms. Van de Sande. Well, what's your response to the government's position that by filing the lawsuit you somehow stopped the process? We didn't stop the 45-day process. That was done well. The lawsuit was filed well after those 45 days and paying the nondisputed amount. That happened long after. That was back in the later part of 2005. They had a 45-day window to give Ms. Van de Sande their accountant's calculations. They failed to do that. They then had to pay Ms. Van de Sande the undisputed amount, which they knew about back in February of 2005, which was $33,691. They didn't do that. So right then and there, there's a breach of Paragraph 14 that precludes summary judgment. I have one question that I want to ask you. Assume it comes down to this. We have the government figure of $33,691, and then we have the Gomez figure that's about $8,000 more. Are you willing to simply accept, for purposes of resolving the case, the $33,000 figure? Certainly. Certainly, at this time, because I think that's a breach in and of itself. Okay. Well, let's hear from the government. We'll save your rebuttal time, Mr. Hoffman. Thank you. Thank you, Your Honors. Mr. Hoffman, that was quite a concession we just heard. Does that end the case? Well, Your Honor, may it please the Court, as far as I think it's important to understand where we are in this case, going to your question about the sentence, Your Honor. I mean, that is where that case is. What the Court of Federal Claims held below is that when Ms. Van DeSandy provides an account and calculated tax consequence, Paragraph 14 will start, and the government is still obligated under Paragraph 14. So that was something that they won below, and that's not on appeal. So that's not really a concession here, Your Honor. Why haven't you paid it? This is the thing I don't get. I mean, there's no dispute over this $33,000 figure. You have your own calculations. You admit that your accountant came up with at least that much. So why hasn't that been paid? You could even have paid it and say that we're not admitting any liability as to anything else. But it's very specific that it's just got to be paid. Right, Your Honor. Two parts to that. First part, as far as the calculations, and everybody's been talking about the $33,000 figure. What that was based on is submissions by Ms. Van DeSandy, and as is reflected in our brief, most of those calculations were performed based on tax documents except for one year that weren't filed. In discovery below, based on a successful motion to compel, we figured we got the tax documents. They don't have any more. The Van DeSandys do not have any more. The actual tax records, we had to go and get the tax transcripts. And if you compare the tax transcripts, what you see is what they submitted, their total tax burden was $123,000 or $133,000. They submitted it multiple times. It changed by $10,000. But when you see what they actually paid, which was finalized a couple months after they filed their suit at the Court of Federal Claims, their actual tax burden for that year was about $85,000. So although it's sort of been presented as, oh, this was all known, this was all accepted, that's not actually the case, Your Honor. But seriously, the government has been fighting for 15 years. Yes, Your Honor. 15 years not to pay this woman. I get the fact that they didn't like the fact that she won at the EEOC and that these payments were made, but they've got to pay those, even under the government's theory of what tax consequences are. Why didn't the government just say, let's figure this out and let's get this part paid? I think that's correct, Your Honor. But here's the premise that that is lying on. What that premise is lying on is that at that time, and we're going back to around the 04-05 timeframe, is that at that time, everything was clean and everybody knew exactly what was going on, and everybody was operating pursuant to paragraph 14. If you look in my brief, Your Honor, in the facts section, you'll see around the end of 2004 and then into 2005, there is paperwork flying back and forth all over the place. There's a dispute over whether or not they submitted the tax consequences in March 04, and then they say October 04, and then they make multiple filings on January 10th to the EEOC. So at this point, although hindsight being 20-20, the Postal Service probably should have said, well, okay, we're going to stay in paragraph 14. We're going to give her whatever she has. The fact is there was a tremendous amount of confusion created by Ms. Van de Sande pursuing multiple avenues of recovery. I just can't even fathom how many government resources have been spent on this when you could sit down in a 15-year timeframe and reach a resolution. Well, Your Honor, but I think that's also incorrect. If you recall, Your Honor, from their complaint, they were not only— You couldn't have figured something out in 15 years? Well, Your Honor, I don't think we could have, Your Honor, given their position that they were owed their entire tax consequences, which in their complaint they alleged as $300,000, and they were also alleging that she was improperly terminated and that she should have gotten her full pay from when she was terminated all the way going up until today, Your Honor. So when you narrow it down to that little issue, Your Honor, I completely agree. The government's behavior seems unreasonable. Let me ask you this. Let's assume for the moment we agree with you on the decision in Van de Sande 1 that she's only entitled to a limited amount of tax consequences payments. Assume we agree with you on her termination claim that she was improperly terminated. And assume we agree with you that she wasn't entitled to be reinstated. Okay? Those are the other issues, right? Yes, Your Honor. Assume we agree with you on all of those. And all that's left then is the issue about the 2003 taxes. Okay? Yes, Your Honor. Under those circumstances, to resolve this lengthy litigation for getting the ill feelings between the Postal Service and everybody in the past, would the government just be willing to pay this $33,000 to resolve it given the premise I gave you about your prevailing on all those other things? Yes, Your Honor. And I can give you an example. That's essentially what happened with the 2004 tax consequences. So in other words, you're saying if you win on those three issues I mentioned, the government is prepared. I'm not going to say today, but the government is prepared to give her the $33,691 that Mr. Michelson came up with. Granted, I understand you say he did that based on figures that weren't up to snuff in terms of actual tax things. But to resolve it, would the government be willing to pay that? Your Honor, if this case is affirmed and the Postal Service receives an amount like that, the Postal Service is not going to… What do you mean receives an amount like that? Because it'll have to be submitted, Your Honor. So this is the other thing. You've got the tax accountant. You've had the accountant calculations of the $33,000 since 2005, right? Now, you keep saying, well, it all got confused. But the reality is when a party has an affirmative obligation under a contract, it doesn't excuse a breach if you say someone else wanted more under the contract. The other party wanted more. You still have to comply with your affirmative obligation under the contract. No, Your Honor. I understand, but also… So you're saying we've got to start all over, even though you've got her accountant calculations, your accountant calculations, and you won't just make the payment? Your Honor, the court held below that Ms. Vandisandy has to submit accountant-calculated tax consequences. So in order to comply with that holding… Right, and why isn't the fact that she submitted to the government in connection with her EEOC proceeding, why wasn't that substantial compliance with the contract? Because, Your Honor, those were based on the documents that I described earlier, which were unfiled… Well, it doesn't say. What it says is she has to have an accountant that does the assessment and submits it. Correct. Right? And you have one opportunity to challenge that, and you went ahead and you got your own calculations, though you didn't turn them over to her. And so you've already made that separate calculation, and the contract says that the undisputed amount has to be paid within 45 days. Yes, Your Honor. Our calculations were made, just to be clear, our calculations were made in 2005. Her calculations were not submitted later until 2006 under the EEOC construct. So you've had both? Yes, Your Honor. That's correct. At least 2006? Yes, Your Honor. April 2006. And you're saying that even today you wouldn't consider paying your numbers until she resubmits, presumably under a different mailing version, the same material? Your Honor, I wouldn't say I wouldn't consider it. That would take us outside the construct of the case. It would have to be pursuant to a settlement agreement, Your Honor, because the government is not going to wind up back in court over this, Your Honor. We do not want to be back in court over this. We want a final judgment and a payment pursuant to that final judgment, Your Honor. What if we said, what if an opinion came down that said, government wins on parameters of tax consequences, the government wins on no reinstatement, and the government wins on her termination argument, okay? And then we said, we deem everything to have been properly submitted when you put together what happened in 2006, and then we deem that a proper submission, a substantial compliance, so that what you then have before you is the $33,000, which Mr. Hanna said he's prepared to accept. Would that be the end of the case? I mean, all good things must come to an end. No, Your Honor. I mean, I think, Your Honor, I guess my caution with that, Your Honor, I believe is that based on that being a substantial compliance, I think there would be additional arguments to be made on plaintiff's behalf because that wouldn't be 100% consistent with what was decided below. In affirmance, however— The Court of Appeals is allowed to say that what was decided below was wrong. Isn't that why we're here? Yes, Your Honor. Yes, Your Honor. I'm just saying, what he asked, I'm sorry, Your Honor, what I understood his question to be is would that be it? Would it be the $33,000? And sitting here today, I haven't thought all the way through it, but I don't think that would be because I believe there would be other paragraphs that would come into effect and would cause additional damages that would have to be resolved based on— You're saying that if the other paragraphs came into effect, the liability would be less? It might be more. That's what I'm saying, Your Honor. I think it would be more. Because of the interest. You have an offer for Mr. Hanna that I thought when you first stood up, you accepted. Yes, Your Honor. Yes or no? Yes, Your Honor. We would pay—the Postal Service, in order to be done with this case, would pay that amount, Your Honor. But the Postal Service, again, based on the long-going— the Postal Service wants finality. The Postal Service is—that is its number one goal. It wants finality. Well, I think you guys ought to go out in the hallway. I mean, my district quartet is getting on here. Why don't we just negotiate the settlement right now? I will represent to you, Your Honor, that there were past negotiations and that there were obstacles that were— You think we should recess? We will ask Mr. Hanna a little bit on rebuttal, Mr. Holmes. Because, I mean, I think the government has a very strong case in all those other points that I sort of went through. And, you know, maybe that's the way—with those out of the way, there's maybe less than meets the eye. But we'll see. See what Mr. Hanna has to say. We'll finish with the government. We'll save you rebuttal time, Mr. Hanna. Not to worry. Do you want an answer from Mr. Hanna now? Oh, no, no, no. I was just—no, I was just— It's fine. You don't need to hear from me. It's fine. We'll hear from you in a few moments. Please be seated. Your Honors, I believe we've touched on a lot of the points here. I guess the only ones that I would also bring to the Court's attention is there is the issue of paragraph 21, and that was properly dismissed as implausible based on Ms. Van Sandy having never identified any specific loss benefits or corresponding damages that could result from early termination of her LWOP status. And, again, I just want to be clear, sitting here today, that my concern with a resolution that would say the 2006 submission was submantial compliance. First of all, I think the Court of Federal Claims got it 100% correct, that that needs to be viewed in the context of when it was submitted. The Court, in prior questioning, has been focused on the issue of how the letter was sent, and that is an issue. But the bigger issue is sort of when— You're saying that's still an issue? That's the silliest issue I've heard. Well, yes, Your Honor. You don't deny receiving it? That's correct, Your Honor. But, again, I'm getting to the more substantial issues, which is the issue that that was submitted in the context of an EEOC case. And given what had happened with the parties up to that point, the Postal Service simply did not view that as a restart of the paragraph 14 process. And, more importantly, four months later,  and, again, we agree that we received it. Four months after that, they went to district court and they filed a complaint that sought all tax consequences. So that was within four months. So despite having received that and our being within our 180 days to pay it, within four months they had gone to district court. I still don't understand why that resolves your obligation to pay. Just because they want more doesn't mean you don't owe what's clearly stated in the agreement. Well, Your Honor, at that point also there was at least one EEOC decision that had decided that the government's obligations under the contract were met and that any further obligations were extinguished. So I think that the Postal Service's actions have to be considered in light of that holding by the EEOC as well. For all these reasons and the reasons presented in our response brief, we respectfully request that the Court affirm the Court of Federal Claims decision. Well, then let me comment, although we haven't consulted. It is not impossible that this panel will decide we're going to end this case, in which case we already have an offer. We have a concession. There are certain aspects, in the back of my mind, interest in others that haven't yet been put on the table, and yet your position, as you sit down, is that the government should be affirmed on all grounds? Yes, Your Honor, and I just want to be clear. And affirmance, we are going to pay them, Your Honor. We are absolutely going to pay them an affirmance. You haven't paid in 15 years. So we now, you say, are you setting a time limit on when you will make that payment? Your Honor, when we did it for 2004, Your Honor, I don't have the calendar in front of me, but I believe when we received their letter for the 2004 tax consequences, I want to say we had them paid in 45 days, Your Honor. Well, that's a start. All right, let's hear from Mr. Hanna. Hanna, let me ask you. You heard the colloquy with Mr. Hoffman. Let's assume that, number one, the Court agrees with the government on Van de Sande 1, what the limits of the tax consequences liability are. Let's assume, number two, we agree with the government on, and I can only speak hypothetically, we agree with the government on the reinstatement point, and we agree with the government on the termination point. Okay? You, contrary to what you're arguing, you would lose on those points. Okay. But then are you willing, under that circumstance, to then accept with no ifs, ands, or buts the 33,691 that Mr. Michelson proposed to end the case? That's a question of whether my client would be willing to accept that. I probably, intellectually, probably would to some extent, Your Honor. If you look at paragraph 14, I think the remedy that was fashioned was to understand the fundamental dispute between all tax consequences and adverse tax consequences, which I think what you're saying, Your Honor, is that Van de Sande 1  I think Van de Sande 1 was all that point. Which is consistent probably with EEOC rulings on this issue. But I think the issue of fundamental breach of this agreement, in paragraph 14 in particular, was, as Your Honors have pointed out, not doing, the government not taking it upon itself to do what it was supposed to do in paragraph 14, which was, at the very least, at that time when it was calculated, back in February 2005, paying to Ms. Van de Sande the undisputed amount, which was 33,691. Later on, Ms. Van de Sande, through her then-counsel, submitted their own tax consequence calculation through another accountant. That was in April, end of April 2006, which was submitted to Mr. Kessler, who was the representative. It was received by him. Yeah, we would say we agreed with you on that, but didn't agree with anything else. Then there's also the issue about, paragraph 14 also requires payment of the tax consequences, of the tax consequence payment. Let's assume she would get it this year, then they would have to pay something. No, but that would, I think, you'd lose on if we affirmed Van de Sande won. No, the paragraph actually says, not only are you going to get the tax consequence payment, but also the tax consequence payment for the tax consequences of the tax consequence payment. That could go on forever. Yeah, it's a little bit convoluted. Could the case be resolved if you lose on those points? Potentially it could be resolved, yes, Your Honor. Just for 33,691? Yes, I probably would recommend it to my client. Okay. But I think the issue is whether or not there was a breach. I think the interpretation of paragraph 14 by the judge to set a condition, absolute condition precedent of the accountant calculated tax consequences as being a way for the government not to pay anything, which I think is wrong. I think that's just a wrong decision. That they still had an obligation to, which they did, they were acting consistently with my interpretation of the contract. They were acting consistently because they went and hired an accountant, even though Mr. Van de Sande and Ms. Van de Sande had not submitted accountant calculations. They were supposed to pay your accountant. Did they do that? No, they haven't paid a dime. They haven't paid a single penny 15 years later. At the very least, there was a breach there. There should have been a liability, at least in paragraph 14. It was misinterpreted by Judge Grigsby, all due respect to her. That argument about as a condition preceding having Ms. Van de Sande submit tax calculations by an accountant, that fell into their laps when the EEOC made this decision in March of 2006. Prior to that time, they never sent one letter to Ms. Van de Sande saying, we're not going to pay you until you first submit to us calculations by your accountant. They never said that. They just made it seem like they're going to pay her because they hired their own accountant who was going to make his own calculations. And Ms. Van de Sande and Mr. Van de Sande provided all the documentation they requested. Mr. Kessler requested all of it. Both you and Mr. Hoffman seem very accommodating and reasonable. You tried. I tried. Perhaps we can get back to the era of good feelings that seemed to prevail where Mr. Kessler and Mr. Van de Sande got into their differences. Yeah, sure, sure. Perhaps. Perhaps. Hopefully. If I was back then, it would have been handled differently. It was their lawyer. Here we are 15 years later, Your Honor. Any more questions? Thank you, Your Honor. OK. Thank you, and thank you both. The case is taken into submission.